**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
CURTIS THROWER,                 :
                                :    Civil Action No. 10-5062 (MLC)
              Plaintiff,        :
                                :       O P I N I O N
         v.                     :
                                :
WILLIAM J. FRASER, et al.,      :
                                :
              Defendants.       :
_____:
```

**COOPER, District Judge**

Plaintiff, Curtis Thrower, a state inmate confined at the Monmouth County Correctional Institution ("MCCI") in Freehold, New Jersey, at the time he submitted the Complaint for filing, seeks to bring this action in forma pauperis ("IFP"). This matter was administratively terminated because Thrower failed to pay the $350 filing fee or submit a complete application to proceed IFP. Thrower later submitted a complete IFP application, and it appears that he qualifies for indigent status. Accordingly, the Court will direct the Clerk of the Court to reopen this matter. Further, the Court will grant Thrower's application to proceed IFP, and order the Clerk of the Court to file the Complaint.

The Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The Court concludes that the Complaint will proceed in part.

## I.  BACKGROUND

Thrower brings this civil action pursuant to 42 U.S.C. § 1983, naming the following defendants: MCCI; William J. Fraser, Warden at MCCI; Selma Morris, MCCI Investigator; Lt. Richard Belowsky; Lt. Baker; Sgt. S. Stephenson; Thomas Huggan, CO; Robert Hislip, CO; CO Walters; and Dr. G, Director at the MCCI Mental Health/Medical Department.  The following factual allegations are taken from the Complaint and are accepted for purposes of this screening only.  The Court makes no findings as to the veracity of the allegations.

In November 2009, Thrower was transferred to MCCI for reasons that are the subject of another action pending in this District Court.  Upon Thrower's arrival at MCCI, his personal property was taken with no explanation other than the fact that Thrower is suing correctional officers.  (Compl., ¶ 6.)  Thrower was then placed in the reception area in a cell with two other inmates.  He complains that the cell was designed for two men, not three.  Thrower also alleges that he asked to be moved to a two-man cell and was told "no" and not to ask again.  (Id.)

Thrower alleges that he had to sleep on the cell floor and that he was still sleeping on the floor on November 28, 2009, when he contacted his family to intervene.  A family member called the jail and allegedly was told that Thrower was on a "hit list" for filing a lawsuit against correctional officers at the

2

Hudson County Correctional Facility.  Thrower's family then contacted Captain Fatigan at MCCI, and plaintiff was moved to housing unit H-2 on November 30, 2009.  (Id.)

Thrower complains that he was subjected to "great harassment and discrimination" in Unit H-2.  He was put in a cell with a gang member.  While the gang inmate assured Thrower he would not be harmed, Thrower grew concerned because he is a homosexual and other gang members were giving Thrower's cell mate a problem about being housed with a homosexual.  Thrower wrote to a federal Magistrate Judge seeking assistance with his housing assignment. (Id.)  A copy of the letter is attached to the Complaint.

Thrower complains that he was being charged with "bogus" incident reports as a form of harassment.  He had re-ordered his personal property only to have it stolen from him.  He was given "4 hours lock-in which totaled an entire month."  (Id.)  Thrower alleges that he had been given extra time in the law library for assisting the paralegal with inmate requests for case research. Several inmates asked plaintiff to help them file § 1983 complaints.  As a result, Thrower received several disciplinary charges from March 25, 2010 to August 31, 2010.  (Id.)

Thrower next claims that he suffers from bipolar disorder, schizophrenia, and depression, which all have worsened from the aformentioned harassment and discrimination.  (Id.)

On August 17, 2010, defendant Belowsky stopped Thrower in the hallway and had another officer search his legal property.

3

Belowsky told Thrower that if he found out that he was helping other inmates file lawsuits, he would put him in "lock-up."  On August 18, 2010, some inmates had come to the law library to complain that some of their legal CDs and DVDs were missing.  On August 19, 2010, Thrower told Investigator Selma Morris about the problem inmates had with the missing DVDs.  She told Thrower to put his complaint in writing.  Thrower went to the law library to type a letter when defendants Belowsky and Stephenson came into the law library and told Thrower to step out.  Stephenson yelled at Thrower for helping other inmates and told him he would be taken to lock-up.  (Id.)

Officers Hislip and Huggan responded to Stephenson's call for escorting Thrower to lock-up.  As they proceeded to take Thrower to lock-up, Hislip and Huggan yelled, "stop resisting," while punching and dragging Thrower along the way.  Thrower states that he fell down as his uniform began to slip down and he felt someone pull on his underwear and stick something in his anus.  Thrower yelled and began to struggle with the officers.  Stephenson told them to pick Thrower up and take him to medical for placement on constant watch.  (Id.)

When Thrower arrived at medical he told them he was harmed.  They took his clothing, and Thrower noticed blood on his underwear.  Thrower asked to see the Prosecutor because he was sexually assaulted.  A lieutenant came to see Thrower at about

3:30 p.m.  Then Internal Affairs came at 7:30 to 8:00 p.m.
Thrower told them what had occurred.  (Id.)

On August 20, 2010, at approximately 7:30 a.m., Thrower was
told to get dressed and taken to see Investigator Morris, and he
gave a statement.  Later in the afternoon, he was taken to the
hospital for a sexual assault examination.  Investigator Morris
was at the hospital, as well as a detective from the Prosecutor's
Office, a rape advocate and a statewide sexual assault nurse
examiner.  Thrower underwent a thorough examination and the nurse
examiner answered his questions.  She concluded the examination
by telling Thrower to alert the medical staff if he felt any
discomfort.  Thrower was then taken back to MCCI where he
remained on constant watch until August 23, 2010.  (Id.)

On August 23, 2010, Thrower was moved to J-Pod on protective
custody status.  On August 27, 2010, Thrower had a disciplinary
hearing on two charges, one for "misuse of electronic equipment"
(Code # 005)[1] and one for conduct that disrupts (Code # 306).
Thrower alleges that these charges had no merit and that his
disciplinary hearing was not legal.  He was sanctioned to 30 days
"lock-up" for these allegedly false charges.

Thrower attaches numerous disciplinary reports to the
Complaint.  They are listed as follows: (1) March 25, 2010, Code

---

[1]  Thrower attaches the disciplinary for this charge, which
actually reads that he was charged with a Code # 005 violation for
threatening another with bodily harm or with any offense against
his/her property.  This incident occurred on April 19, 2010.

# 210 violation for possession of anything not authorized for
retention or receipt by an inmate or not issued to him through
regular correctional facility channels (i.e., unauthorized
possession of library supplies); (2) April 6, 2010, Code # 709
violation for failure to comply with a written rule or regulation
of the correctional facility (unmade bed in cell); (3) April 18,
2010, Code # 210 violation for possession of anything not
authorized for retention or receipt by an inmate or not issued to
him through regular correctional facility channels (i.e.,
unauthorized possession of library supplies); (4) April 18, 2010,
Code # 153 violation for stealing (took library supplies); (5)
April 19, 2010, Code # 205 violation for misuse of authorized
medication; (6) April 19, 2010, Code # 005 threatening another
with bodily harm or with any offense against his or her property;
(7) April 20, 2010, Code # 306 violation for disruptive conduct
(plaintiff went to library without authorization); and (8) April
20, 2010, Code # 402 violation for being in an unauthorized area
(being in the law library without proper authorization).

Thrower further alleges that, on August 30, 2010, the
correctional officers on J-Pod "put all kinds of trash and
spitting tobacco in [his] food trays" in retaliation for his
complaints against other officers.

On or about September 7, 2010, Thrower saw a detective from
the Prosecutor's Office.  Thrower gave them a formal statement

and asked that criminal charges be filed.  He was told that this would be done after the investigation was completed.  Two days later, on or about September 9, 2010, a correctional officer, Officer Walters, came to Thrower's cell and threatened him. Walters allegedly told Thrower that he was making trouble and that something could happen to him to make it look as if he killed himself.  Thrower alleges that he became fearful for his life and stopped eating and taking his "mental health medication." Thrower informed "Sarah" from Mental Health that he needed to see the Mental Health Director Dr. G because he was depressed and feared for his life.  Sarah allegedly told Thrower that Dr. G does not have time for this "nonsense" and that she had more complaints from him than she could file.  (Compl., p. 7G.)

Thrower complains that he was not allowed to shower for four days, from September 9, 2010 until September 13, 2010.  On September 14, 2010, the detective from the Prosecutor's Office told Thrower that she would be in contact with the Sex Crimes Unit Prosecutor.  On September 16, 2010, Thrower states that defendant Morris filed charges that Thrower had made fictitious reports.  It appears that these charges were filed in the Freehold Township Municipal Court in August and September 2010, and that Thrower was sentenced to 365 days on February 4, 2011. (See Offender Details, N.J. Department of Corrections website, https://www6.state.nj.us/DOC_Inmate/details?x=10580548&n=0).

Thrower states that he is on a hunger strike.  He has been warned to drop any litigation he may have concerning MCCI's officers and staff.  He further alleges that he has not been allowed access to the law library to conduct litigation for his pending cases since August 19, 2010.  He also alleges that he has had his mail thrown away.  He claims that this denial of access to the law library has caused him to miss court filing deadlines, and that the courts "most likely will dismiss my appeals, motions and other legal matters."  (Compl., p. 7I.)

Thrower asserts claims of "bias harassment, discrimination, personal abuses and injury, filing of false reports by officers, violation of due process, conduct unethical and unbecoming of an officer, failure to provide proper mental health needs, failure to follow policy and procedure, threats on my life, mental cruelty."  (Compl., p. 7H.)  He seeks more than $20 million dollars in damages, and asks that he be moved from MCCI. (Compl., Relief Sought.)

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court must review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court must identify cognizable claims and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

8

who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

The Court must construe a pro se complaint liberally in the plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  But the Court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), examined Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a

plausible claim for relief survives a motion to dismiss.
Determining whether a complaint states a plausible claim for
relief will ... be a context-specific task that requires the
reviewing court to draw on its judicial experience and
common sense.  But where the well-pleaded facts do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged-but it has not
"show[n]"-"that the pleader is entitled to relief."  Fed.
Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50 (citations omitted).

The Court further explained that

a court . . . can choose to begin by identifying pleadings
that, because they are no more than conclusions, are not
entitled to the assumption of truth. While legal conclusions
can provide the framework of a complaint, they must be
supported by factual allegations. When there are well-
pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise
to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

A complaint must now allege "sufficient factual matter" to

show that a claim is facially plausible.  This then "allows the

court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id. at 1948.  A plaintiff

must demonstrate that the allegations of a complaint are

plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, &

n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

A district court must now conduct the two-part analysis set

forth in Iqbal:

First, the factual and legal elements of a claim should be
separated.  The District Court must accept all of the
complaint's well-pleaded facts as true, but may disregard
any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
Second, a District Court must then determine whether the
facts alleged in the complaint are sufficient to show that

10

the plaintiff has a "plausible claim for relief." [Id.]   In other words, a complaint must do more than allege the plaintiff's entitlement to relief.   A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

### III.  SECTION 1983 ACTIONS

To state a claim for relief under § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution or laws of the United States and, (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Thrower names MCCI as one of the defendants in this action.  However, MCCI is not an entity cognizable as "person" for the purposes of a § 1983 suit.  See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989); Grabow v. S. State Corr. Fac., 726 F. Supp. 537, 538-39 (D.N.J. 1989); see also Marsden v. Fed. BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994).  Thrower's allegations against MCCI will be dismissed.

### IV.  FURTHER ANALYSIS

### A.  False Disciplinary Charges

Thrower asserts that false disciplinary charges were filed against him in violation of his constitutional rights.  But the

act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986) (holding mere filing of false charge does not constitute cognizable claim under § 1983 as long as inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that as long as officials provide prisoner with procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then prisoner has not suffered constitutional violation).[2]

Thrower does not allege that he was denied an institutional disciplinary hearing or an opportunity to present evidence to refute the charges.  Rather, he merely complains that he was sanctioned on meritless charges.  Consequently, there is no showing of wrongdoing that would rise to the level of a constitutional deprivation, and such claim will be dismissed for failure to state a claim upon which relief may be granted.

---

[2]  Wolff sets forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 563-71.  There are no allegations here that Thrower was denied these requirements.

To the extent that Thrower is asserting that defendant Morris filed false criminal charges against him for filing a false report to law enforcement officers concerning his alleged sexual assault, such claim is not cognizable. It appears that Thrower has been convicted on these charges. Thrower's allegations here seem to suggest that he is simply attacking his conviction, which is more appropriately brought as a federal habeas action under 28 U.S.C. § 2254. See Preiser v. Rodriguez, 411 U.S. 475 (1973).

The Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and 28 U.S.C. § 2254. In Preiser, state prisoners who had been deprived of good-conduct-time credits in disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release. 411 U.S. at 476. The prisoners did not seek compensatory damages for the loss of the credits. Id. at 494. The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500.

Indeed, any § 1983 claim based on the claim that Thrower's conviction was invalid or erroneously obtained in violation of his constitutional rights is barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994) (holding "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the

13

invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated").

Heck addressed whether a prisoner could challenge the constitutionality of a conviction in a suit for damages only under § 1983 (a form of relief not available through a habeas corpus proceeding).  The Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court also instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).

The Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90.

It appears that Thrower's state convictions on charges of filing false criminal reports have not been invalidated. Thus, any claim in this § 1983 action that would necessarily imply the invalidity of Thrower's conviction on these charges is barred by Heck. Therefore, such claim must be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**B.   Deprivation of Personal Property Claim**

Thrower appears to allege a claim concerning the loss of his personal property. To the extent that he raises a deprivation of property claim, it must be dismissed for failure to state a claim. The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property, without due process of law[.]" The "due process of law" requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty or property. Zappan v. Pa. Bd. of Prob. & Parole, 152 Fed.Appx. 211, 220 (3d Cir. 2005) ("essential requirements of any procedural due process claim are notice and the opportunity to be heard"). Hence, to show a prima facie claim of a procedural due process violation, a plaintiff

15

must establish: (1) a deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process.  See Rusnak v. Williams, 44 Fed.Appx. 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or property.  If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard.") (citation omitted).

To have a property interest, Thrower must demonstrate "more than an abstract need or desire for it. ... He must, instead, have a legitimate claim of entitlement to it" under state or federal law.  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  The procedural due process analysis here involves a two step inquiry: whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process Clause of which he has been deprived and, if so, whether the process afforded the complaining party to deprive him of that interest comported with constitutional requirements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Thrower does not indicate what property was lost, but it appears he may be referring to his legal documents.  Thrower has not alleged or shown that the loss of his personal property or

legal documents have prevented him from pursuing this action, or any action in state court.

Moreover, Thrower has a post-deprivation remedy.  Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law.  See Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984).  The New Jersey Tort Claims Act provides a post-deprivation judicial remedy to persons believing they were deprived of property by the State or local government.  See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of Am., 1 F.Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).

Therefore, any deprivation of property claim asserted by Thrower here will be dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.   Access to Law Library Claim

Thrower appears to assert a claim that he has been denied access to the jail law library in violation of right of access to courts guaranteed under the First and Fourteenth Amendments.  The right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth

17

Amendments.[3]  The right of access to the courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  Prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.  The touchstone is meaningful access to the courts.  Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988).

Bounds held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  But the right of access to the courts is not unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order

---

[3]  The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Rests. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  Also, "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Hudson, 468 U.S. at 523 ("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff, 418 U.S. at 576.  The right of court access may also arise under the Sixth Amendment's right to counsel, but it is not implicated here.

to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996). Similarly, a pretrial detainee has a right of access to the courts as to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. Mar. 31, 2000).

Moreover, a prisoner alleging a violation of the right of access must show that prison officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Thrower fails to allege any actual injury due to the alleged denial of access to the courts.  He does not allege that he was

unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing this Complaint or other state and federal court complaints.  He also does not allege that any of his court cases were dismissed because he did not have timely access to the courts.  At best, he seems to argue a possibility of injury, not actual injury.  Thus, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation .... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).  This denial of access to the courts (law library) claim will be dismissed for failure to state a claim.

**D.    Place of Confinement**

Thrower also seeks to be transferred from MCCI to another facility.  He states that he should not be confined in a county where he does not have Superior Court charges pending.

An inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level, security classification, or place of confinement.  See

Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005) (Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976). The custody placement or classification of state prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225. Governments, however, may confer on inmates liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Thus, a convicted inmate such as Thrower has no liberty interest arising under the Due Process Clause itself in remaining in the general population, or in a prison facility of his choosing.  See Hewitt v. Helms, 459 U.S. 460, 466-67 & n. 4 (1983); Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).  Therefore, this Court will dismiss this claim for failure to state a claim.

**E.   Conditions of Confinement**

Thrower also appears to assert a conditions of confinement claim.  For instance, he complains that he was denied access to a

shower for four days in September 2010, and that he had to sleep on the floor for a time in November 2009.

"The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" Betts v. New Castle Youth Dev., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)), cert. denied, 2011 WL 196324 (2011)).  That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. (quoting Hudson, 468 U.S. at 526-27).  An alleged deprivation, to rise to the level of an Eighth Amendment violation, must result in the denial of the minimal civilized measure of life's necessities.  Id. at 835.

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991); Counterman v. Warren Cnty. Corr. Fac., 176 Fed.Appx. 234, 238 (3d Cir. 2006).  The objective component mandates that only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Helling v. McKinney, 509 U.S. 25, 32 (1993).  This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are

22

sufficient to make out an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm.  See Farmer, 511 U.S. at 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a conditions-of-confinement claim by showing that the conditions alleged, either alone or in combination, deprive him of the minimal civilized measure of life's necessities, such as adequate food, clothing, shelter, sanitation, medical care, and personal safety.  Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981); Young v. Quinlan, 960 F .2d 351, 364 (3d Cir. 1992).  However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society.  Id. at 347.  An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety."  Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

The Court finds that the allegations as set forth by Thrower do not rise to the level of a serious constitutional deprivation. Thrower has alleged no facts to show that he has been deprived of basic hygiene and shelter needs for an extended period of time. Indeed, his allegations involve only loss of shower and a bed for a very short period of time.  Therefore, this claim will be dismissed for failure to state a claim.

**F.   Denial of Medical Care Claim**

Thrower next alleges a denial of mental health care claim. In particular, he alleges that he was denied mental health care in September 2010 after he asked "Sarah" from the Mental Health department at MCCI for help because he was fearful for his life.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  To set forth a cognizable claim for a violation of the right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that the medical needs are serious. "Because society does not expect that prisoners will have

unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" <u>Hudson v. McMillian</u>, 503 U.S. at 9. A serious medical need is: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." <u>Atkinson v. Taylor</u>, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); <u>see</u> <u>Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to a serious medical need. <u>See</u> <u>Natale</u>, 318 F.3d at 582 (finding deliberate indifference requires proof that official knew of and disregarded excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. <u>Farmer</u>, 511 U.S. at 837-38. Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. <u>Andrews v. Camden County</u>, 95 F.Supp.2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state

25

Eighth Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

Deliberate indifference has been found where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; (3) prevents a prisoner from receiving needed or recommended treatment; or (4) causes needless suffering by denying simple medical care for a reason that does not serve any penological purpose.  <u>See</u> <u>Rouse</u>, 182 F.3d at 197; <u>Atkinson</u>, 316 F.3d at 266; <u>see also</u> <u>Monmouth Cnty. Corr. Inst'l Inmates</u>, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3d Cir. 1993).

Thrower has not alleged facts sufficient to support an Eighth
Amendment claim under either the objective prong (serious medical
need) or the subjective prong (deliberate indifference).  Rather,
he simply recites bare allegations, which "are no more than
conclusions, [and thus,] are not entitled to the assumption of
truth." Iqbal, 129 S.Ct. at 1950.  Accordingly, the Court will
disregard this denial of medical care claim's "naked assertions
devoid of further factual enhancement" and "threadbare recitals
of the elements of a cause of action, supported by mere conclusory
statements," id. at 1949, and dismiss it pursuant to 28 U.S.C. §
1915(e)(2)(B) and § 1915A(b)(1) for failure to state a claim.

**G.    Excessive Force Claim**

Thrower asserts a claim against defendants Belowsky,
Stephenson, Hislip, and Huggan for use of excessive force in
violation of the Eighth Amendment.  See Graham v. Connor, 490
U.S. 386, 392-394 (1989) (cases involving use of force against
convicted individuals are examined under Eighth Amendment's
proscription against cruel and unusual punishment).

"The Eighth Amendment, in only three words, imposes the
constitutional limitation upon punishments:  they cannot be
'cruel and unusual.'" Rhodes, 452 U.S. at 345.  The Eighth
Amendment prohibits conditions involving the unnecessary and
wanton infliction of pain or are grossly disproportionate to the
severity of the crime warranting imprisonment. Id. at 347.  The

27

cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346.  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element.  Farmer, 511 U.S. at 834.

The objective element addresses whether the deprivation of a basic human need is sufficiently serious; the subjective element addresses whether the officials acted with a sufficiently culpable state of mind.  Wilson, 501 U.S. at 298.  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. at 8.  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very

28

purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6.

"When prison officials maliciously and sadistically use force to

cause harm, contemporary standards of decency always are

violated."  Id. at 9.  In such cases, a prisoner may prevail on

an Eighth Amendment claim even in the absence of a serious

injury, the objective component, as long as there is some pain or

injury and something more than de minimis force is used.  Id. at

9-10 (finding that blows which caused bruises, swelling, loosened

teeth, and a cracked dental plate were not de minimis for Eighth

Amendment purposes).

Factors to be considered in determining whether force was

used in "good faith" or "maliciously and sadistically" include:

> (1) "the need of the application of force"; (2) "the
> relationship between the need and the amount of force
> that was used"; (3) "the extent of injury inflicted";
> (4) "the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible
> officials on the basis of the facts known to them"; and
> (5) "any efforts made to temper the severity of a
> forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley, 475 U.S. at 321).  Thus, not all use of force is

"excessive" and will give rise to the level of a constitutional

violation.  See Hudson, 503 U.S. at 9 (not "every malevolent

touch by a prison guard gives rise to a federal cause of

action").  Therefore, "[n]ot every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers,

violates a prisoner's constitutional rights."  Id. at 9-10.

29

The allegations of the Complaint, if true, may suggest a claim that the correctional officers acted in a malicious and excessive manner.  Indeed, Thrower alleges that they punched and dragged him while he was restrained, and that while he was restrained, he was sexually assaulted.  Therefore, the Court will allow this claim of excessive force in violation of the Eighth Amendment to proceed.

**H.   Harassment/Retaliation Claim**

Thrower alleges that defendants who are correctional officers have harassed and discriminated against him in retaliation for filing complaints against MCCI officers.  This wrongful conduct includes the filing of false disciplinary charges, putting trash and spitting tobacco in his food trays, and subjecting him to threats.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution".  White, 897 F.2d at 111-12.  To prevail on a retaliation claim, a plaintiff must show that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah

v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)); see also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

The Court finds that Thrower has alleged facts that may be sufficient at this early stage of litigation, if true, to support a claim of harassment and retaliation. Therefore, this claim may proceed.

## IV.   CONCLUSION

The claims against the defendants who are correctional officers asserting (1) the use of excessive force in violation of the Eighth Amendment, and (2) harassment and retaliation, will be allowed to proceed. All other claims will be dismissed. An appropriate order follows.

                    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:  December 6, 2011